*In re* MARRIAGE OF CONSTANCE M. PETERSON, Petitioner-Appellant and Cross-Appellee, and GLENN D. PETERSON, Respondent-Appellee and Cross-Appellant.

Third District No. 3—85—0279

Opinion filed December 23, 1985.

Watts C. Johnson, of Johnson, Martin & Russell, P.C., of Princeton, for appellant.

Scott Madson, of Princeton, for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

Constance Bartman, a/k/a Constance Peterson, filed a petition for a rule to show cause, alleging that her ex-husband, Glenn Peterson, was in arrears on his child support obligation. The trial court entered judgment for the amount of the arrearage and ordered Glenn to pay $150 in attorney fees to Constance. Constance appeals the amount of the fees, while Glenn cross-appeals the awarding of any fees.

Under the Peterson's 1981 judgment of dissolution, Glenn was obligated to pay $100 weekly towards the support of the parties' minor children. In September 1984, Glenn's employer convinced him to accept a temporary "voluntary" reduction in wages to help keep the company afloat. Glenn's hourly rate of pay fell from $13.21 per hour to $10 per hour. Glenn, who had previously remarried, called Constance to get her to agree to a reduction in child support until his union could renegotiate the following April. She gave no definite response, but told Glenn that she would have to ask her new husband. The figure mentioned by Glenn was $75 per week. Glenn began paying $80 per week and continued to do so until the instant petition and other pending matters were resolved.

Constance never objected to the reduced payments. Instead, she contacted Watts Johnson, a Princeton attorney, to handle the matter. Johnson made no attempt to resolve the matter informally with Glenn's attorney of record.

In his order disposing of Constance's petition, the trial judge specifically rejected the conclusion that Glenn's failure to pay the full amount was without cause or justification. However, feeling that he had no choice but to award fees, the judge ordered Glenn to pay $150, which appears to reflect some percentage of the amount collected. Attorney Johnson had presented evidence that his customary rate was $75 per hour and that he had spent over seven hours in reasonable

preparation and handling of the matter.

■ The court clearly misconstrued section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508). Section 508(a)(2) provides that the court may from time to time award attorney fees in connection with "the enforcement or modification of any order or judgment under this Act *other than the enforcement of a provision for child support."* (Emphasis added.) Section 508(b) covers those orders relating to child support by providing for an award of fees if the court finds that failure to pay was without cause or justification. This court has held that such an award is mandatory upon a finding of inadequate cause or justification (*Fogliano v. Fogliano* (1983), 113 Ill. App. 3d 1018, 448 N.E.2d 245). Consequently, reading sections 508(a)(2) and 508(b) together, there is no provision for a discretionary award of fees where the court finds that a failure to pay child support is justifiable. Therefore, the award of fees to Constance was improper in light of the court's explicit findings.

■ Constance argues that the issue was not raised below and is therefore waived. It is true that Glenn's attorney concentrated on attacking the amount of the fee requested by attorney Johnson. While this issue should have been more diligently litigated below, there was no waiver. Constance's petition prayed for fees to be awarded pursuant to section 508(b). When the court found that Glenn's failure to pay the full amount was not without cause or justification, there was no basis to award fees.

Constance also argues that the court erred in finding that Glenn's failure to pay was justified. This finding can only be reversed if it is against the manifest weight of the evidence.

■ The evidence is fairly even on the question. Glenn suffered a substantial cut in pay which undoubtedly hampered his ability to pay over $400/month to Constance. Moreover, the reason for the wage reduction was not voluntary as that word is commonly understood. The amount of the arrearage was relatively small, and there was at least an effort to keep payments regular in a substantial percentage of the amount ordered. On the other hand, Constance never actually agreed to accept the reduced amount. There was also a lack of "definite and explicit evidence" of Glenn's inability to pay the full amount following his pay cut (*In re Marriage of Chenoweth* (1985), 134 Ill. App. 3d 1015, 481 N.E.2d 765). Accordingly, we cannot say that the trial court's resolution of this issue was against the manifest weight of the evidence.

As a final matter, we are constrained to address the trial court's method of calculating attorney fees. The court entertained a contin-

gency or percentage analysis in deciding what was reasonable to order Glenn to pay to Constance. This was improper on two counts. First, the reason for awarding fees in child support cases is to compensate the party who is forced to go to the expense and bother of chasing down the delinquent party (*In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 448 N.E.2d 1030). This should include all reasonable charges involved in preparing and presenting the enforcement action. Also, the contingency analysis is particularly inappropriate in light of the nature of the enforcement action. An award for the complaining party's fees does more than just compensate a one-shot debt collection. It also serves as a means of ensuring compliance in the future. Thus, there should be an element of recompense for the prosecutorial and deterrent functions served by the complaining party's attorney.

For the reasons given, however, we must reverse that portion of the order awarding attorney fees in this case.

Reversed in part.

SCOTT and STOUDER, JJ., concur.